DMP:VJ/BSA
F. #2018R00440

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

        Appellee,                            No. 18-CR-612 (ERK)

    - against -

MUSA YENNI,

        Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## BRIEF OF APPELLEE UNITED STATES OF AMERICA

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Douglas M. Pravda
Assistant U.S. Attorney

Victoria Jaus
Bijoux Shayer-Altamirano
Student Prosecutors

    (Of Counsel)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

    The Government's Case ................................................................................................... 1

    The Defense Case ........................................................................................................... 5

    The Verdict ..................................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

    I.      THE GUILTY VERDICT WAS SUPPORTED
           BY THE EVIDENCE .......................................................................... 7

          A.     Standard of Review.................................................................... 7

          B.     The Definition of Simple Assault ............................................. 8

          C.     Judge Tiscione Correctly Found the
               Defendant Guilty of Simple Assault ....................................... 10

    II.     THE STATUTE IS NOT IMPERMISSIBLY
           VAGUE WHEN APPLIED TO THE FACTS
           OF THIS CASE .................................................................................. 14

    III.    THE DEFENDANT CANNOT PREVAIL ON AN
           INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ................... 17

          A.     Trial Counsel's Performance Was Not
               Ineffective ............................................................................... 18

          B.     The Defendant Failed to Show that He
               Suffered Prejudice................................................................... 22

CONCLUSION...................................................................................................................... 24

TABLE OF AUTHORITIES

Page

Federal Cases

Adelson v. Hannel,
  652 F.3d 75 (1st Cir. 2011) ............................................................................. 21

Anderson v. City of Bessemer City,
  470 U.S. 564 (1985) .......................................................................................... 7

Chapman v. United States,
  500 U.S. 453 (1991) ........................................................................................ 14

Daly v. Lee,
  No. 11-CV-3030 (JFB), 2014 WL 1349076 (E.D.N.Y. 2014) ................................ 19

Gonzalez v. United States,
  722 F.3d 118 (2d Cir. 2013) ............................................................................ 18

Greiner v. Wells,
  417 F.3d 305 (2d Cir. 2005) ............................................................................ 20

Hiers v. Bradt,
  No. 11-CV-0270 (ERK), 2014 WL 6804252 (E.D.N.Y. 2014) .............................. 20

Jackson v. Virginia,
  443 U.S. 307 (1979) .......................................................................................... 8

Jones v. Berry,
  880 F.2d 670 (2d Cir. 1989) ............................................................................ 12

Kimmelman v. Morrison,
  477 U.S. 365 (1986) ........................................................................................ 18

Lindstadt v. Keane,
  239 F.3d 191 (2d Cir. 2001) ............................................................................ 22

Man Ferrostall, Inc. v. M/V Akili,
  704 F.3d 77 (2d Cir. 2012) ................................................................................ 7

Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers, Ltd.,
  190 F.3d 64 (2d Cir. 1999) ................................................................................ 7

Parrish v. Sollecito,
    249 F. Supp. 2d 342 (S.D.N.Y. 2003).................................................................... 17

Pavel v. Hollins,
    261 F.3d 210 (2d Cir. 2001)................................................................................. 22

Strickland v. Washington,
    466 U.S. 668 (1984)........................................................................... 17, 18, 22

United States v. Autuori,
    212 F.3d 105 (2d Cir. 2000)................................................................................. 8

United States v. Bayes,
    210 F.3d 64 (1st Cir. 2000)........................................................................... 10, 15

United States v. Caccia,
    122 F.3d 136 (2d Cir. 1997)............................................................................... 21

United States v. Delis,
    558 F.3d 177 (2d Cir. 2009)........................................................................ 8, 9, 15

United States v. Fitzgerald,
    882 F.2d 397 (9th Cir. 1989) ............................................................................. 15

United States v. Guilbert,
    692 F.2d 1340 (11th Cir. 1982) ......................................................................... 10

United States v. Javino,
    960 F.2d 1137 (2d Cir. 1992)............................................................................. 18

United States v. Lewellyn,
    481 F.3d 695 (9th Cir. 2006) ......................................................................... 9, 15

United States v. Morrison,
    153 F.3d 34 (2d Cir. 1998).................................................................................. 8

United States v. Rios,
    856 F.2d 493 (2d Cir. 1988)............................................................................... 12

United States v. Smith,
    812 F.2d 161 (4th Cir. 1987) ............................................................................. 15

United States v. Walker,
    191 F.3d 326 (2d Cir. 1999)................................................................................. 8

United States v. Weiss,
   930 F.2d 185 (2d Cir. 1991)................................................................................................ 18

United States v. Whiteweather,
   275 F.3d 741 (8th Cir. 2002) ............................................................................................ 10

United States v. Williams,
   197 F.3d 1091 (11th Cir. 1999) ........................................................................................ 10

White v. White Rose Food,
   237 F.3d 174 (2d Cir. 2001).............................................................................................. 7

Yeadon v. New York City Transit Authority,
   719 F. Supp. 204 (S.D.N.Y. 1989) ................................................................................... 16

Federal Statutes

18 U.S.C. § 113(a)(5)............................................................................................. 8, 9, 10, 14, 15

Federal Rules

Fed. R. Crim. P. 58(g)(2)(D)............................................................................................... 7

iv

PRELIMINARY STATEMENT

On August 19, 2017, during a flight from Fort Lauderdale to LaGuardia Airport, the defendant Musa Yenni repeatedly touched, rubbed and squeezed a female victim's thigh. For his conduct, the defendant was charged with simple assault, in violation of Title 18, United States Code, Section 113(a)(5). The defendant was convicted following a bench trial on May 8, 2018 before the Honorable Steven Tiscione, United States Magistrate Judge for the Eastern District of New York. On November 2, 2018, Judge Tiscione sentenced the defendant to one year of probation, a psycho-sexual evaluation, and a $5,000 fine.

The defendant now argues on appeal that the evidence at trial was insufficient to support a guilty verdict, that the simple assault statute is impermissibly vague, and that he received ineffective assistance of counsel. The Court should reject all three arguments. First, there was sufficient evidence to sustain a conviction because victim's testimony, which Judge Tiscione found to be credible, established that the defendant committed an offensive touching, testimony that was corroborated by video evidence that showed the defendant touching the victim's thigh. Second, the simple assault statute is not impermissibly vague, as the Second Circuit and other courts have repeatedly upheld the simple assault statute as applied to similar sets of facts. Third, the defendant fails to meet the high standard for showing ineffectiveness assistance of counsel.

STATEMENT OF FACTS

The Government's Case

During the bench trial before Judge Tiscione, the government offered the testimony of the victim, Katia Lafontant, corroborating evidence in the form of photographs and a video of the offensive touching by the defendant, the testimony of a flight attendant who

1

confronted the defendant on the airplane, and the testimony of the case agent who responded

after the flight arrived at LaGuardia Airport.

Ms. Lafontant testified that, on August 19, 2017, she flew on Spirit Airlines

Flight 174, from Fort Lauderdale to LaGuardia Airport in Queens, New York.  (A 19-20).  Ms.

Lafontant was returning home to New York after taking a cruise with her boyfriend, Enoch

Charleton.  (A 19).  Ms. Lafontant sat in the middle seat, Mr. Charleton sat to her left, and the

defendant sat on her right.  (A 20-21; GX 6).  Ms. Lafontant had never seen or spoken to the

defendant before.  (A 21).  Ms. Lafontant sat with a blanket in her lap.  (A 21-22).  At the start of

the flight, Ms. Lafontant felt the defendant's hand on her side of the seat, and then felt the

defendant's left hand rub the outside of her right thigh.  (A 20, 23, 39).  At first, she thought this

was just a mistake and ignored it.  (A 23).

However, the defendant's touching continued.  Ms. Lafontant felt the defendant's

hand rub her thigh, so she moved towards the left, away from the defendant, but the touching

continued.  (A 23).  Ms. Lafontant then strategically placed her handbag next to her right leg to

create a security barrier between herself and the defendant's left hand, squeezing her body even

further to the left in an uncomfortable position.  (A 42, 43).  In response, the defendant moved

his hand away.  (A 43).  Ms. Lafontant then placed her bag back on her lap so that she could

sleep and regain some comfort.  (A 23).  Nevertheless, the defendant's touching continued,

developing into a pattern: when Ms. Lafontant squeezed her body towards the left to avoid the

touching, the defendant removed his hand; when Ms. Lafontant repositioned herself to a more

comfortable position, the defendant brought his hand back to her thigh.  (A 53).  During this

time, Ms. Lafontant felt confused and did not know what to do.  (A 24).  Approximately halfway

through the flight, Ms. Lafontant told her boyfriend that she thought the person next to her was

2

touching her leg.  (A 24).  Mr. Charleton, who was sleeping throughout most of the flight, turned his head to look at the defendant but then continued sleeping.  (A 44).  Ms. Lafontant realized that she would need to take a picture of the incident for anyone to believe her. (A 24, 52).

Towards the end of the flight, Mr. Charleton got up to use the restroom.  (A 24). While Mr. Charleton was up, the defendant placed his hand under Ms. Lafontant's blanket, brought his hand higher up her leg, and squeezed Ms. Lafontant's thigh.  (A 24-25).  In response, Ms. Lafontant took out her phone and pretended to play a game while she tried to take several pictures, but the flash accidentally went off.  (A 25).  The defendant then moved his hand off of her thigh.  (A 26).  Soon after, the defendant once again placed his left hand under Ms. Lafontant's blanket and began rubbing her thigh.  (A 26, 29).  At this point, Ms. Lafontant thought that the photos alone would not be sufficient evidence of the offensive touching, noting that her word, as a black woman, would not bear any weight against the word of a white man like the defendant.  (A 52).  Ms. Lafontant began video-taping the defendant's hand rubbing her thigh under her blanket.  (A 26, 29).  Soon after, Ms. Lafontant got up and showed two flight attendants the video.  (A 26).  The flight attendants switched Ms. Lafontant's seat and contacted law enforcement.  (A 26).

The government offered into evidence the two photographs and video that Ms. Lafontant took during the flight.  (A 20, 28-29; GX. 1, 2, 3).  The photographs show the defendant's hand, underneath her blanket, touching her leg.  (A 28; GX 1, 2).  The video, as Ms. Lafontant described at trial, shows the defendant touching Ms. Lafontant's right thigh with his left hand in a continuous up and down motion while the defendant's right hand, extended across his lap, holds Ms. Lafontant's blanket; at one point, the video shows the defendant's right hand pulling Ms. Lafontant's blanket up even further to better conceal his left hand.  (A 153, 31).

The government also offered the testimony of a flight attendant, Stacy Werse, who described her confrontation with the defendant.  On August 19, 2017, Ms. Werse was one of five flight attendants working on Spirit Airlines Flight 174.  (A 56).  Ms. Werse testified that she was informed by an off-duty flight attendant that a passenger had been molested.  (A 58).  In response, Ms. Werse spoke to Ms. Lafontant and asked her what was going on.  (A 58).  Ms. Werse observed Ms. Lafontant looking very uncomfortable, nervous, scared and upset.  (A 59).  Ms. Werse watched the video on Ms. Lafontant's phone, and witnessed a hand touching Ms. Lafontant's lap inappropriately.  (A 59-60).  Ms. Werse testified that after watching the video, she felt upset, disturbed and uncomfortable.  (A 70).  Ms. Werse explained that as a woman, she could sympathize with the victim because the behavior that was caught on video would have made Ms. Werse feel violated and taken advantage of had it happened to her.  (A 70).  Ms. Werse changed Ms. Lafontant's seat so she did not have to sit next to the defendant.  (A 60).  Ms. Werse then asked the defendant why he would touch the person next to him.  (A 60).  Ms. Werse stated that at first, the defendant appeared to be trying to play dumb.  (A 64).  Ms. Werse instructed the defendant not to lie to her because she saw the video.  (A 64).  Ms. Werse testified that the defendant's demeanor changed after she mentioned the video; Ms. Werse described the defendant's general vibe shifting from confusion to trying to work his way out of it, by asking her if "they could talk about it."  (A 65).  Ms. Werse took the defendant's identification to make a report and informed him that she called law enforcement.  (A 65).

The government also called FBI Special Agent Krister Suter, who testified that he responded to an incident between two passengers, spoke with the victim and her boyfriend, spoke with the defendant, and viewed the video.  (A 74-76).  Agent Suter then consulted with the U.S. Attorney's Office and issued a summons to the defendant.  (A 75).

<u>The Defense Case</u>

The defendant testified in his own defense, and denied touching the victim.  The defendant testified that he sat in the aisle seat on the flight, and described the woman next to him as black, middle aged and rather big.  (A 115).  The defendant claimed that he did not find her sexually attractive in any way because he generally likes younger, slimmer, athletic, white women.  (A 116-17).  The defendant testified that he spent the flight resting and that it was possible that he may have dozed off.  (A 118-20).  The defendant stated that he was awake both times that Ms. Lafontant's boyfriend got up to use the restroom.  (A 130).

The defendant denied squeezing or rubbing Ms. Lafontant's thigh.  (A 123).  When asked if he recalled rubbing the victim's leg with his hand, as seen in the video, the defendant claimed to not recall but said it was possible because he sometimes rubs his legs in the same manner as shown in the video.  (A 123).  The defendant claimed that, if he rubbed the victim's leg, it was unintentional, and he did not think he was doing anything wrong at the time because it was a cramped space.  (A 123).  The defendant admitted that there was physical contact with the victim at some point during the flight but stated that he did not know whether his hand was actually touching the victim's leg in the video because his hand was partially covered by the victim's blanket.  (A 132).  Acknowledging that his hand was under the victim's blanket, the defendant stated: "whether the [victim's] blanket was there before or after my hand was there, I don't know."  (A 132).

The defendant testified that, when Ms. Werse approached the defendant, he told her twice that he did not know what she was talking about.  (A 121).  The defendant denied ever saying "let's talk about it" to Ms. Werse after finding out about the video.  (A 131).

Three character witnesses also testified on the defendant's behalf.  The defendant's rabbi, Mr. Serels, testified that he has known the defendant for 22 years and that the defendant is very involved with his congregation and highly regarded by the community.  (A 84, 87-88).  The defendant's son, Jonathan Yenni, testified that the defendant was very involved in his life as a mentor, coach and father, and that the defendant is regarded as being honest and respectful. (A 93-94).  The defendant's co-worker, Nicolo Vergani, testified that the defendant is well known, has a good reputation and is very respectful of people.  (A 102-03).

The Verdict

Judge Tiscione found the defendant guilty of simple assault, finding that the evidence sufficiently established the charge beyond a reasonable doubt. (A 156).  The government quotes Judge Tiscione's findings in full below:

> Having reviewed the evidence and heard the testimony, I make the following findings:  I find that Ms. Lafontant's testimony was credible, particularly in light of the video evidence. I think the video shows a deliberate stroking of the victim's thigh by the defendant, not inadvertent conduct, particularly since the defendant put his hand underneath the blanket in the victim's lap and at one point, the defendant even uses his other hand, reaches across his body and readjusts the blanket so it covers more of his hand. I think these are actions that are more consistent with the victim's description of deliberate offensive touching rather than the defendant's claim of unintentional inadvertent conduct.

> I think Ms. Werse's testimony about the demeanor of the victim and the defendant following the incident is also credible and consistent with Ms. Lafontant's testimony.

> While I found that the character witnesses were all credible and honestly believed the defendant's reputation, none of them were on the plane that day and their opinions about Mr. Yenni's character do not override the other evidence in the case.

> I don't find the defendant's denial to be credible in light of the video evidence. A brief touch here or there with the back of the hand might be unintentional. Sticking a hand under the blanket of a passenger sitting next to you, running their hand up and down their thigh and adjusting the blanket to cover the

offending hand and only the hand engaged in the [il]licit conduct is intentional and knowing conduct.

Accordingly, I find the Government has proven beyond a reasonable doubt that the defendant is guilty of the offense of simple assault.

(A 155-56).

ARGUMENT

I.    THE GUILTY VERDICT WAS SUPPORTED BY THE EVIDENCE

A.    Standard of Review

The law is clear that the standard of review on an appeal to the district court from a magistrate judge's ruling is identical to the standard of review that the court of appeals applies when it reviews a district court ruling:  "The defendant is not entitled to a trial de novo by a district judge.  The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).  In an appeal from a district court to a court of appeals, the district court's "findings of fact [are reviewed] for clear error." Man Ferrostall, Inc. v. M/V Akili, 704 F.3d 77, 82 (2d Cir. 2012) (citing Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers, Ltd., 190 F.3d 64, 67 (2d Cir. 1999)).  "Under the clearly erroneous standard, there is a strong presumption in favor of a trial court's findings of fact unless [the reviewing court is] left with the definite and firm conviction that a mistake has been committed."  White v. White Rose Food, 237 F.3d 174, 178 (2d Cir. 2001).  "The clearly erroneous standard applies when findings are based entirely on physical or documentary evidence, as well as on inferences from other facts."  Anderson v. City of Bessemer City, 470 U.S. 564, 573-75 (1985).  Furthermore, a trial judge's "logically permissive interpretations of the evidence" cannot be deemed clearly erroneous on appeal if the trial judge chose between one of two logically permissible interpretations.  Id.

7

In a challenge to the sufficiency of the evidence underlying a criminal conviction, an appellate court will view the evidence presented at trial "in the light most favorable to the government, crediting every inference that the [fact finder] might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted). The reviewing court will consider the evidence presented at trial "in its totality, not in isolation" and cannot substitute its "own determinations of credibility or relative weight of the evidence" for that of the trier of fact. United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Rather, the reviewing court will defer to the trier of fact's "determination of the weight of the evidence and the credibility of the witnesses, and to [the trier of fact's] choice of the competing inferences that can be drawn from the evidence." United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998). Therefore, a reviewing court may not overturn a conviction on grounds of legal insufficiency of the evidence at trial if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

B.      The Definition of Simple Assault

Title 18, United States Code, Section 113(a)(5) criminalizes the commission of a "simple assault" within the special maritime and territorial jurisdiction of the United States. In United States v. Delis, 558 F.3d 177 (2d Cir. 2009), the Second Circuit concluded that any offensive touching constitutes "simple assault" regardless whether the perpetrator possessed any specific intent to injure. Id. at 178.

In Delis, an airline passenger became involved in an altercation with a flight attendant and "pushed the flight attendant's hand away from his face." Id. The defendant was convicted of simple assault in violation of Section 113(a)(5) after a bench trial in front of a magistrate judge. Id. at 178-79. The magistrate judge found that "an offensive contact" is a

8

proper predicate for simple assault, which required only intent to commit an offensive touching and not intent to injure.  Id. at 179.  The district court affirmed the magistrate judge's ruling, rejecting Delis's argument that an intent to injure is a required element of simple assault.  Id.

On appeal, the Second Circuit affirmed that "specific intent to injure" is not an element of simple assault under Section 113(a)(5).  The Second Circuit reviewed the common law definition of assault, which included an attempted battery.  Id. at 180.  Common-law battery, in turn, required only an offensive touching.  The Second Circuit quoted Blackstone's Commentaries for the proposition that battery is "the unlawful beating of another" and noting that "[t]he least touching of another's person willfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner."  Id. at 180, quoting 3 William Blackstone, Commentaries on the Laws of England *120.

Therefore, the Second Circuit concluded, an offensive touching constituted simple assault regardless whether the perpetrator possessed any specific intent to injure.  Id. at 180-81.  As common-law battery did not require specific intent, the Second Circuit concluded that conviction under 18 U.S.C. § 113(a)(5) for conduct constituting common-law battery, which falls within the definition of "simple assault," did not require any finding of specific intent to injure.  Id. at 181, 184.

Numerous other Circuits have also adopted the view that simple assault under 18 U.S.C. § 113(a)(5) is a general intent crime and does not require specific intent to injure.  See, e.g., United States v. Lewellyn, 481 F.3d 695, 697-98 (9th Cir. 2006) (under Section 113(a)(5) "noninjurious but intentional, offensive contact (even if relatively minor) satisfies the

requirement for simple assault under the battery theory," which does not require intent to injure); United States v. Whiteweather, 275 F.3d 741, 742-43 (8th Cir. 2002) (simple assault conviction sustained by "any intentional offensive bodily touching . . . however slight, . . . regardless of whether physical harm is intended or inflicted"); United States v. Bayes, 210 F.3d 64, 68 (1st Cir. 2000) ("a specific kind of intent is not inherent in the statutory definition" for assault under § 113(a)(4) or (5)); United States v. Williams, 197 F.3d 1091, 1096 (11th Cir. 1999) (Section 113(a)(5) does not require an intent to cause physical harm); United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982) ("[Section 113(a)(4)] 'requires neither a particular degree of severity in the injury nor the type of specific intent which characterizes the more serious offenses under Section 113.'").

Therefore, an offensive touching, with no specific intent to injure, is all that is required for simple assault. As set forth in the next section, the evidence presented at trial established that such an offensive touching in fact occurred.

C.     Judge Tiscione Correctly Found the Defendant Guilty of Simple Assault

The defendant's primary argument on appeal is that Judge Tiscione applied the incorrect standard of proof in finding the defendant guilty. Specifically, the defendant seizes upon a evanescent statement used by the court ("I think") to argue that the addition of these two words within the Court's findings lowered the standard of proof from beyond a reasonable doubt to some lesser, but unstated, standard. (Def. Br. at 1, 13). The defendant's argument takes Judge Tiscione's statements out of context. When viewed in content, it is clear that Judge Tiscione faithfully applied the applicable standard of proof beyond a reasonable doubt.

As set forth in the fact section above, following the parties' summations, Judge Tiscione began his ruling by stating: "Having reviewed the evidence and heard the testimony, I make the following findings." Judge Tiscione then stated those findings in part as follows:

10

Judge Tiscione found Ms. Lafontant's testimony credible, particularly in light of the video evidence.  (A 155).  Judge Tiscione found that the video showed a deliberate stroking of the victim's thigh by the defendant, not inadvertent conduct, because the video showed that the defendant put his hand underneath the blanket in the victim's lap and then used his other hand, by reaching across his own body, to readjust the victim's blanket so that he could cover even more of his hand.  (A 155).  Judge Tiscione found those actions to be more consistent with the victim's description of deliberate offensive touching than the defendant's claim of unintentional inadvertent conduct.  Judge Tiscione found the defendant's denial not credible in light of the video evidence.  (A 155).  Judge Tiscione stated that "a brief touch here or there with the back of the hand might be unintentional.  Sticking a hand under the blanket of a passenger sitting next to you, running their hand up and down their thigh and adjusting the blanket to cover the offending hand and only the hand engaged in the [il]licit conduct is intentional and knowing conduct."  (A 155-56).  Judge Tiscione then concluded his remarks by stating, "Accordingly, I find the Government has proven beyond a reasonable doubt that the defendant is guilty of the offense of simple assault."  (A 156).

Judge Tiscione did not apply an incorrect standard.  He began by stating that he was making the "following findings" (emphasis added).  He then listed what those findings were.  Throughout his recitation of his findings, Judge Tiscione used the words "I think" and "I find" interchangeably.  For instance, Judge Tiscione stated "I find that Ms. La Fontant's testimony was credible" and, later, "I think that Ms. Werse's testimony […] is also credible."  When read in context, it is clear that Judge Tiscione was using the word "think" in a colloquial sense to state his findings and that he used the word "think" as a synonym for the word "find."  Contrary to the defendant's argument, Judge Tiscione did not use the word "think" as an attempt to lower the

standard of proof from "beyond a reasonable doubt."  Indeed, the fact that Judge Tiscione concluded his remarks by stating, "I find the Government has proven beyond a reasonable doubt that the defendant is guilty of the offense of simple assault" (A 156 (emphasis added)) makes abundantly clear that Judge Tiscione applied the correct legal standard.

Moreover, Judge Tiscione's findings were amply supported by the record, particularly when, as required here, the evidence is viewed in the light most favorable to the government and all inferences are drawn in the government's favor.

First, Judge Tiscione found the victim's testimony to be credible.  That credibility finding is entitled to deference on appeal because Judge Tiscione had the unique ability to observe the victim testify, to evaluate her statements and her demeanor, and to form a conclusion as to her credibility.  See e.g., Spinner v. City of New York, 2003 U.S. Dist. LEXIS 14854, *27-28 (E.D.N.Y. 2003) ("The Second Circuit has similarly held that district judge reviewing the credibility determinations of a magistrate may defer to the judgment of the magistrate because of the magistrate's superior ability as the primary factfinder to observe witnesses and their demeanor.") (citations omitted).  Judge Tiscione's credibility determination may be reversed only if this court is "left with a definite and firm conviction that a mistake has been committed."  United States v. Rios, 856 F.2d 493, 495 (2d Cir. 1988).

Second, the credible testimony of the victim alone was enough to support the verdict.  It is well-settled that the victim testimony of a sole eyewitness is sufficient to support a guilty conviction.  See, e.g., Jones v. Berry, 880 F.2d 670 (2d Cir. 1989) (holding that a rational factfinder could have found beyond a reasonable doubt that that the defendant was guilty based on the testimony of a single eyewitness); Bonilla v. Portuondo, 2004 U.S. Dist. LEXIS 15618 (S.D.N.Y. Aug. 4, 2004) (evidence from a single eyewitness was sufficient to establish

defendant's guilt beyond a reasonable doubt).  Thus, the victim's testimony alone in this case was sufficient to support a conviction.

Third, the victim's testimony was supported by corroborating evidence, including the photographs and video and the credible testimony of the flight attendant.  Contrary to the defendant's arguments on this appeal, there was no "abject lack of any evidence" to corroborate the victim's allegations, and the video did not show only the defendant rubbing his own leg. (Def. Br. at 14).  At trial, the government presented documentary evidence capturing the defendant completing the battery, including two photographs and a video. (A 28-29; GX 1, 2, 3). The photographs showed two different passengers' thighs side by side, with the defendant's thigh on the right side of the frame and the victim's thigh on the left of the frame, and the defendant's left hand positioned between his thigh and the victim's thigh.  The video showed the defendant's left hand rubbing the victim's thigh with the outside of his hand; that left hand was partially covered by the victim's blanket, which the defendant held up with his right hand.  (A 153).  As the defendant rubbed the victim's thigh area in the video, the defendant lifted the victim's blanket up even further to conceal his offending left hand.  (A 153, 31).

In addition, the government presented incriminating testimony by Ms. Werse, the flight attendant, who testified that she had the impression that the defendant was initially "playing dumb" when she confronted him.  However, when Ms. Werse informed the defendant that the incident was captured on video, the defendant's demeanor completely changed and he said: "Let's talk about it."  (A 65).  Judge Tiscione found Ms. Werse to be a credible witness and her testimony to corroborate that offered by the victim.  (A 155).

Finally, the evidence presented at trial also showed that the defendant possessed the requisite mens rea to support the conviction.  The government provided proof of the

defendant's general intent to commit the crime.  Specifically, as Judge Tiscione concluded, the video evidence showed the defendant trying to cover the offending hand, and only the offending hand, with the victim's blanket.  The defendant's attempt to conceal the offending behavior was evidence of consciousness of guilt (and could likely even go to specific intent, a much higher standard than the mere general intent needed for a simple assault conviction).  Moreover, as Judge Tiscione found, the evidence showed that the defendant engaged in "intentional and knowing conduct."  Specifically, Judge Tiscione found, referring to the video evidence, "[s]ticking a hand under the blanket of a passenger sitting next to you, running their hand up and down their thigh[,] and adjusting the blanket to cover the offending hand and only the hand engaged in the [il]licit conduct is intentionally and knowing conduct."  (A 155-56).

The defendant argues that he was unable to form the general intent required to commit the offense of simple assault because he was asleep.  However, as the government addresses further below, this argument is not supported by the evidence.  At trial, the defendant never claimed to be asleep during the rubbing captured in the video.  Rather, the defendant claimed to be resting, and only mentioned sleep when he stated that it was possible that he had dozed off at some point during the flight.  (A 118-20).

II.     THE STATUTE IS NOT IMPERMISSIBLY VAGUE
        WHEN APPLIED TO THE FACTS OF THIS CASE

The defendant claims that 18 U.S.C. § 113(a)(5) is unconstitutionally vague as applied to the facts of his case.  For the following reasons, his argument fails.

A constitutional challenge to a statute on vagueness grounds must show that the statute is unconstitutionally vague as applied to the facts of the case, unless First Amendment interests are involved.  Chapman v. United States, 500 U.S. 453 (1991).  "[When an] action does not involve First Amendment rights, this court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute,

14

the conduct in question is prohibited." United States v. Fitzgerald, 882 F.2d 397 (9th Cir. 1989). The Second Circuit and other courts have repeatedly upheld the simple assault statute as applied to similar sets of facts, thus showing that the statute is not impermissibly vague as applied to the defendant's conduct.

For example, in Delis, the Second Circuit discussed the "simple assault" statute at length (as set forth on pp. 8-9 above) and concluded that the definition of "simple assault" covered an attempt by an airline passenger to "push[] the flight attendant's hand away from his face." Delis, 558 F.3d at 178.  Numerous other Circuits have also concluded that similar kinds of intentional offensive touching establishes a "simple assault" under Section 113(a)(5). See, e.g., Lewellyn, 481 F.3d at 698-99 (intentionally spitting on another person falls within the ambit of "simple assault" under Section 113(a)(5)); Bayes, 210 F.3d at 69 (testimony that a defendant "rubbed" and "squeezed" the victim's buttocks, causing her to feel "angry, surprised, and frightened," was sufficient to sustain a conviction under § 113(a)(5)); United States v. Smith, 812 F.2d 161, 164 (4th Cir. 1987) (evidence that a defendant grabbed the victim's wrist and arm amounted to simple assault under the predecessor provision to Section 113(a)(5)).

Other recent cases have also upheld Section 113(a)(5) convictions on similar facts and have denied vagueness claims similar to the one that the defendant raises here.  In United States v. Gangasani, 2016 U.S. Dist. LEXIS 149578 (N.D. Ill. Oct. 28, 2016), the district court denied a defendant's vagueness claim under 18 U.S.C. § 113(a)(5) where the defendant was convicted of simple assault on an aircraft when the victim woke up to find the defendant's hand down her pants and the defendant's coat draped halfway over her body, shielding the defendant's hand from view.  Id. at *14; see also United States v. Jaffe, 2019 U.S. Dist. LEXIS 22937 (E.D.Va. Feb. 12, 2019) (holding that a physician, who placed both of his hands on a fellow physician's shoulders to prevent her from exiting the operating room during a medical procedure, committed simple assault under Section 113(a)(5)).  Thus, the "simple assault" statute has been applied to numerous cases containing offensive sexual touching, including one in which the defendant "rubbed" and "squeezed" the victim's buttocks (Bayes) and one in which the

15

defendant placed his hand down the victim's pants and shielded his actions with his coat (Gangasani).  Thus, the facts in the instant case are more than sufficient to show that the defendant's conduct, under any reasonable construction of the simple assault statute, was prohibited.

The cases that the defendant cites in support of his argument that the statute is unconstitutionally vague as applied to his conduct do not support his argument.  First, the defendant cites Yeadon v. New York City Transit Authority, 719 F. Supp. 204 (S.D.N.Y. 1989), to argue that sitting next to a passenger on an airline flight is similar to "cramped conditions . . . of the New York City subways, [which] can invite erroneous perception of sexual abuse, offensive rubbing and jostling."  (Def. Br. at 16, quoting Yeadon).

Yeadon is not, however, a criminal case.  It is a civil rights class action suit.  And, moreover, the defendant cites the case out of context.  The full quote from Yeadon from which the defendant's excerpt is taken makes clear that the district court was not saying that "offensive rubbing and jostling" on the subways could not constitute simple assault.  Rather, that case involved innocent civilians who were arrested on the subways who sued the New York Police Department for eliciting false confessions from the arrestees by falsely telling the arrestees that there were witnesses ready to testify that the arrestees had groped them.  The court concluded that under those circumstances, it was reasonable for an arrestee to falsely confess:

> Witness misperception may have seemed particularly plausible to the arrestees because the cramped conditions of New York City subways invite erroneous perception of "sexual abuse," offensive rubbing, and "jostling," movement of the hand toward a pocket or purse of another, the two crimes of which every plaintiff was accused.

Yeadon, 719 F. Supp. at 210.  In other words, the district court observed that the witnesses might have been swayed to confess to a crime they did not commit because of the plausible notion that a witness/victim might have erroneously perceived a touching as offensive.  Nothing in Yeadon, however, holds that the simple assault statute is impermissibly vague where the conduct involves an offensive touching through the defendant's touching, rubbing and squeezing a victim's thigh.

16

Indeed, a New York City rush hour subway ride, such as that described in <u>Yeadon</u>, where hundreds of individuals are squeezed against each other while standing in an overcrowded train, is distinct from a two-hour airplane flight with assigned individual seating.

    Next, the defendant cites <u>Parrish v. Sollecito</u>, 249 F. Supp. 2d 342, 349 (S.D.N.Y. 2003), a class-action gender discrimination case, for the proposition that, "Under some circumstances, a person's touching another on the shoulder or rubbing an arm may be ambiguous and may be misunderstood as regards to sexual motivation . . . and situations may arise in which reasonable people may differ as to whether or not a touching, even if sexually driven, was objectively offensive or severe."  (Def. Br. at 16, quoting <u>Parrish</u>, 249 F. Supp. 2d at 349)).

    However, nothing in <u>Parrish</u> holds that a simple assault conviction cannot be premised on a sexual touching of a victim's thigh.  In this case, Judge Tiscione heard the testimony with respect to the touching at issue (which the victim contended was offensive and the defendant contended was inadvertent) and concluded beyond a reasonable doubt that the touching was offensive.  In any event, there is a significant difference between rubbing or touching a victim's arm or shoulder, as in <u>Parrish</u>, and rubbing a victim's thigh in up and down motions, as here.  Indeed, the following sentence in <u>Parrish</u> addresses a more analogous situation: "A man's hand crawling under a woman's skirt and creeping toward her groin, not once, but on four separate occasions, cannot reasonably be considered as anything but because of sex."  <u>Parrish</u>, 249 F. Supp. 2d at 349.  Here, similarly, the defendant's hand, crawling under the victim's blanket and creeping up and down her thigh on several occasions throughout the course of a two hour flight cannot be considered ambiguous, inoffensive behavior.  Thus, a reasonable person would likely conclude that the conduct at issue here falls under the offensive touching required for simple assault.

III.  THE DEFENDANT CANNOT PREVAIL ON AN
    <u>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM</u>

    In order to establish ineffective assistance of counsel a defendant must establish both that: (1) counsel's representation fell below an objective standard of reasonableness; and (2)

17

the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

The first prong requires that courts recognize counsel's "wide latitude" in making tactical decisions and imposes a "strong presumption that counsel's conduct falls within a wide range or reasonable professional assistance."  Strickland, 466 U.S. at 687-88.  The Court "must view the defendant's claim through the eyes of trial counsel, not through 'the distorting effects of hindsight.'"  United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992) (quoting Strickland, 466 U.S. at 689).  "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance."  Id.

The second prong requires that a defendant "show[] that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Indeed, the "ultimate focus of inquiry" is whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process."  Id. at 670, 696.  A defendant's speculative arguments about an error's impact on the result of the proceeding do not establish prejudice.  See United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991).

The two-prong Strickland standard is "highly demanding."  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).  A court must reject a movant's ineffective counsel claim if it fails to meet either prong.  Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (citing Strickland, 466 U.S. at 687).  Here, the defendant failed to satisfy either prong, let alone both prongs. Therefore, the court must reject his claim.

A.    Trial Counsel's Performance Was Not Ineffective

The defendant argues that his trial counsel was ineffective in two ways: (a) for failing to raise a "sleep disorder" defense and failing to call a "sleep disorder" expert witness,

18

and (b) failing to request an adverse inference based on the government's failure to call the victim's boyfriend and a flight attendant as witnesses.

The claim with regard to the "sleep disorder" defense suffers from a number of flaws, including that the evidence at trial did not show that the defendant was asleep at the time of the offensive touching, thus calling into doubt the entire basis of a sleep disorder defense. During the trial, the defendant testified that he was awake when the victim's boyfriend and Ms. Lafontant each got up to use the restroom. (A 129-130). Additionally, Ms. Lafontant testified that she observed that the defendant was awake when her boyfriend got up. (A 24). Indeed, the victim's boyfriend had to squeeze by the defendant's seat in order to get to the aisle to go to the bathroom. This is critical because Ms. Lafontant videotaped the defendant touching her leg while her boyfriend was in the restroom. (A 24-25). After Ms. Lafontant filmed the defendant, she waited a "couple of minutes then got up and went to the bathroom." (A 26). The evidence shows that the defendant was awake when both the victim and her boyfriend went to the bathroom, and therefore that the defendant was awake during the video recording, when he was touching the victim. How could trial counsel be ineffective for failing to raise a "sleep disorder" defense when the evidence does not show that the defendant was asleep at the time of the offensive touching that was recorded on the video?   See Daly v. Lee, No. 11-CV-3030 (JFB), 2014 WL 1349076 (E.D.N.Y. 2014) (holding trial counsel's failure to retain a ballistics expert did not render him ineffective, after he reasonably concluded that further testing would have been unnecessary).

Second, the defendant's argument also fails because the defendant made no showing that he suffered from a "sleep disorder." Trial counsel could not have been ineffective for failing to raise a sleep disorder defense if the defendant did not have a sleep disorder at all.

19

And even if the defendant could show that he suffered from a sleep disorder, the defendant made no showing that any supposed "sleep disorder" expert would have testified that his repeated offensive touching of the victim – including touching, rubbing and squeezing her thigh – was caused by any such sleep disorder.  Moreover, the defendant also failed to show that any supposed "sleep disorder" expert could have reached that conclusion through a scientifically valid method that would have satisfied a Daubert challenge.  Indeed, the very same trial counsel that defendant now claims was ineffective for failing to call a "sleep disorder" expert offered such a purported expert in a different case involving a sexual assault on an airplane in January 2017, but Judge Chen held following a Daubert hearing that the methodology that the purported expert applied in that case was "woefully unreliable" and "not based on scientific testing."  See United States v. Karadimas, No. 16-CR-125 (PKC), Tr. dated Jan. 12, 2017, at 74-75.  Thus, trial counsel was aware of such a potential defense and made a strategic decision not to pursue it in this case.  The decision not to call a particular witness or expert is typically a question of trial strategy that reviewing courts are ill-suited to second-guess.  Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005).

Rather than pursue such a baseless defense, trial counsel called the defendant to testify that he had not committed any sexual touching, called three character witnesses to testify to the defendant's character for respectfulness toward others, and thoroughly cross examined the government's witnesses.  There was nothing ineffective about that trial strategy.  See Hiers v. Bradt, No. 11-CV-0270 (ERK), 2014 WL 6804252 (E.D.N.Y. 2014) (rejecting claim of ineffective assistance where defense counsel conducted a spirited cross-examination of two victims, and objected numerous questions posed by prosecution).

20

Finally, the defendant's "adverse inference" argument merits little discussion. The defendant argues that his trial counsel was ineffective for failing to request a "missing witness" charge when the government did not call as trial witnesses the victim's boyfriend and a different flight attendant than the one who testified. (Def. Br. at 19).

The defendant has not shown that either supposedly "missing" witness had admissible evidence to offer. The testimony regarding the off-duty flight attendant was that the victim told the off-duty flight attendant what had happened, and the off-duty flight attendant alerted Ms. Werse, who watched the video and confronted the defendant. (A 26, 58). The off-duty flight attendant could not have testified to her hearsay conversation with the defendant. At most, the off-duty flight attendant could have testified to what he did in response, which was to notify Ms. Werse, a fact that was elicited during the examination of the victim and Ms. Werse (A. 26, 58). Accordingly, the off-duty flight attendant had no admissible evidence to offer. As for the victim's boyfriend, the victim testified that her boyfriend was asleep for most of the flight. (A 24). The victim also testified that the defendant's touching escalated when her boyfriend got up to use the bathroom, so he was not present when that sexual touching occurred. (A 24-25). Thus, the probative value of the boyfriend's testimony was minimal. Additionally, trial counsel used cross-examination to highlight the absence of the boyfriend and the other flight attendant, so this issue was already presented to the court. (A 34-42, 71-73, 78-79).

Moreover, a district court sitting as a factfinder is under no obligation to draw an adverse inference because the missing witness rule permits, rather than compels, the fact finder to draw the inference. Adelson v. Hannel, 652 F.3d 75, 87 (1st Cir. 2011). The "missing witness" instruction permits the jury to draw an adverse inference against a party for failing to call a witness when the witness's testimony would be material and the witness is peculiarly

within the control of the party.  United States v. Caccia, 122 F.3d 136, 138 (2d Cir. 1997).  Here, as set forth above, there was no showing that either witness's testimony was material and no basis for the fact-finder to draw an adverse inference from the absence of witnesses who had no probative testimony to offer.  Even if the Court could have drawn an adverse inference, it would not have needed trial counsel to make such a request.  This was not a jury trial where jurors need to be instructed as to the possibility of an adverse inference because they do not know the law.  Judge Tiscione is amply familiar with the law, and was well aware that he could, if he chose, draw an inference from the fact that a particular witness was not called to testify.  That he did not do so was undoubtedly because no adverse inference was appropriately drawn for the reasons set forth above, not because of trial counsel's failure to request such a charge.

      B.     The Defendant Failed to Show that He Suffered Prejudice

        The defendant additionally failed to show that he was prejudiced by trial counsel's allegedly ineffective representation.  In order to establish the second prong of Strickland, the defendant must show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In other words, trial counsel's alleged errors must have been of such a magnitude such that it "undermines the outcome."  Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001).  An error by trial counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001).  Here, the defendant has not only failed to show that trial counsel was ineffective, he has failed to show that any alleged errors would have affected the outcome of the trial.

        For many of the same reasons as set forth above, trial counsel's alleged errors did not undermine the outcome of the case.  First, the defendant failed to provide any evidence that he was asleep or suffered from a sleep disorder or that an expert could have testified – applying

22

valid scientific methodology – that a sleep disorder could have caused the sexual touching at issue in this case.  Indeed, as noted above, in a similar case, Judge Chen precluded a defendant from calling a sleep disorder expert because the expert could not satisfy the <u>Daubert</u> standard. Without making any of these showings, the defendant would not have been able to offer a sleep disorder defense or call a sleep disorder expert to testify, and therefore such a defense or expert would have had no effect on the outcome of the trial.

Second, again for the same reasons set forth above, the allegedly "missing" witnesses would not have been able to provide admissible and probative testimony that would have affected the outcome of the case.  Furthermore, Judge Tiscione was well aware that he could, if he chose, draw any appropriate conclusions from a witness's absence.

Finally, Judge Tiscione's recitation of his factual findings made clear that his ruling was based primarily on his determination that the victim's testimony was credible and the defendant's denial was not.  Indeed, Judge Tiscione's credibility finding was supported by the video evidence offered at trial.  (A 155).  Judge Tiscione explicitly found that the defendant's testimony was not credible in light of the video evidence.  (A 155).  Neither the addition of a "sleep disorder" defense nor an "adverse inference" charge would have made the defendant any more credible or the victim any less credible.  Therefore, any alleged ineffectiveness in trial counsel's representation of the defendant did not prejudice the outcome of the case.

23

<u>CONCLUSION</u>

For the reasons advanced above, the defendant's appeal seeking a reversal of Judge Tiscione's conviction should be denied and the Court should uphold the judgment of conviction for simple assault.

Dated:      Brooklyn, New York
            April 1, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York

                    Approved by:        /s/ Douglas M. Pravda
                                        Douglas M. Pravda
                                        Assistant U.S. Attorney

                    By:                 Victoria Jaus
                                        Bijoux Shayer-Altamirano
                                        Student Prosecutors